**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2654
_____

HUBERT DORCANT,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A027-471-100)
Immigration Judge:  Honorable Walter A. Durling
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 17, 2011

Before:  CHAGARES, VANASKIE AND STAPLETON, Circuit Judges

(Opinion filed:  November 18, 2011)

_____

OPINION

_____

PER CURIAM

Hubert Dorcant, proceeding pro se, petitions for review of the Board of Immigration Appeals' ("BIA") final order of removal. For the reasons that follow, we will deny the petition.

I.

Dorcant, a native of Haiti, was admitted to the United States as a conditional permanent resident in 1995. He became a lawful permanent resident in 1997. In March 2009, the United States District Court for the District of New Jersey sentenced him to 41 months' imprisonment following his conviction for sixteen counts of various fraud-related offenses. The Department of Homeland Security ("DHS") subsequently initiated removal proceedings against him, charging him with being removable as an alien convicted of an aggravated felony, see 8 U.S.C. § 1227(a)(2)(A)(iii), and as an alien convicted of a violation of, or an attempt or a conspiracy to violate, 18 U.S.C. § 1546 (relating to fraud and misuse of visas, permits, and other entry documents), see 8 U.S.C. § 1227(a)(3)(B)(iii).

In the proceedings before the Immigration Court, Dorcant, who acted without an attorney, argued that he was not subject to removal because he is a United States citizen. In support of this argument, he alleged that he had previously applied for naturalization, and that his application had ultimately been granted. He conceded, however, that he had

2

never taken the oath of allegiance or received a certificate of citizenship. In response to Dorcant's claim, the Government averred that, while its file on him indicated that he had submitted a naturalization application in 2004, there was no evidence that this application had ever been granted.[1]

In March 2011, Immigration Judge ("IJ") Walter A. Durling rejected Dorcant's claim of citizenship:

> While the Court accepts [Dorcant's] contention that he applied for United States citizenship and took the exam, apparently passed the exam, he was never naturalized, he never took the oath of allegiance and the certificate of United States citizenship was never issued to him. Between the time of him being notified by [United States Citizenship and Immigration Services ("USCIS")] that he was eligible for citizenship and the time he was perhaps scheduled to become a citizen, he committed these offenses which forms the basis of these removal proceedings. While [he] has asked the Court to issue the oath of allegiance to him, the Court has explained to [him] it is without authority to do that. [Dorcant] is no longer eligible for citizenship because of his aggravated felony convictions.

(A.R. at 47.) After rejecting this claim, the IJ found that Dorcant was ineligible for any other relief from removal.[2] As a result, the IJ ordered his removal from the United States.

---

[1] The Government's file on Dorcant also included an earlier naturalization application that he had submitted in the 1990s. The Government averred that this application had been marked "NF," for non-filed, because, when Dorcant submitted it, he was not eligible for naturalization. (See A.R. at 79.)

[2] The IJ found that Dorcant was ineligible for Temporary Protected Status, and that Dorcant had "knowingly and intelligently" waived his right to pursue relief under the Convention Against Torture. (See id. at 47.)

On appeal, the BIA upheld the IJ's order of removal.  In doing so, the BIA, like the IJ before it, rejected Dorcant's claim of citizenship:

> [Dorcant] first applied for citizenship in 2004 and took and passed the exam.  In 2005, he was told that his application for citizenship had been granted.  However, he never took the oath of allegiance or was issued a certificate of United States citizenship.  Delays resulted in him not being scheduled for the oath ceremony until after he committed his criminal offenses.

(Id. at 3.)  The BIA also rejected Dorcant's claim that his due process rights had been violated, concluding that he "has shown neither error nor prejudice here.  Though he blames the federal government for the delay, he would yet be eligible for United States citizenship had he not committed the crimes that resulted in his 16 federal convictions."  (Id.)

Dorcant now seeks review of the BIA's decision.

II.

Dorcant's petition centers on his claim of citizenship.  Although we generally lack jurisdiction to review an aggravated felon's final order of removal, see 8 U.S.C. § 1252(a)(2)(C), we nonetheless have jurisdiction to review his challenge to the agency's denial of his citizenship claim, provided there is no genuine issue of material fact with respect to that claim.[3]  See Brandao v. Att'y Gen. of the U.S., 654 F.3d 427, 428 (3d Cir. 2011) (citing 8 U.S.C. § 1252(b)(5)(A)).  Since there is no genuine issue of material fact

---

[3] We also have jurisdiction to review constitutional claims and questions of law pursuant

4

in this case, we may review the agency's rejection of Dorcant's citizenship claim.[4]  Our review of this claim is plenary.  See Jordon v. Att'y Gen. of the U.S., 424 F.3d 320, 328 (3d Cir. 2005).

To obtain United States citizenship via naturalization, an applicant must, inter alia, take an oath of allegiance to the United States in a public ceremony.  See 8 U.S.C. § 1448(a); 8 C.F.R. § 337.1(a).  Dorcant concedes that he never took this oath.  Although he claims that USCIS was responsible for the delay in scheduling his oath ceremony, this allegation does not somehow confer citizenship upon him.  And, as the BIA highlighted, but for his convictions, he would still be eligible to obtain citizenship.

Dorcant argues that the BIA failed to consider his claim that the doctrine of equitable estoppel should apply in this case.  For that doctrine to apply to the Government in the immigration context, one must demonstrate "(1) a misrepresentation; (2) upon which he reasonably relied; (3) to his detriment; and (4) affirmative misconduct." Mudric v. Att'y Gen. of the U.S., 469 F.3d 94, 99 (3d Cir. 2006).  In his brief before the BIA, Dorcant claimed that, in September 2005, a USCIS officer interviewed him concerning his naturalization application.  (See A.R. at 9.)  At the end of the interview, the officer told him that he had "met all requirements for naturalization," and that the

---

to 8 U.S.C. § 1252(a)(2)(D).

[4] Although the parties dispute whether USCIS actually granted Dorcant's 2004 naturalization application, this disagreement does not raise a material issue of fact, for, as explained below, Dorcant's citizenship claim can be resolved without regard to the outcome of his naturalization application.

agency would schedule his "final hearing" in less than a month. (Id.) According to Dorcant, USCIS failed to notify him "of any development in this matter," and his "effort to follow up in this matter through the phone was abortive." (Id.) In April 2006, USCIS informed him that his oath ceremony had been delayed due to the "FBI name check program." (Id. at 10.) Dorcant was indicted for his criminal offenses a few months later.

Assuming *arguendo* that these allegations, some of which Dorcant did not present to the IJ, were properly before the BIA, see 8 C.F.R. 1003.1(d)(3)(iv) ("Except for taking administrative notice of commonly known facts such as current events or the contents of official documents, the [BIA] will not engage in factfinding in the course of deciding appeals."), they fail to establish that the Government engaged in affirmative misconduct. And even if these allegations were enough to establish affirmative misconduct, applying the doctrine of equitable estoppel would not have changed the outcome of Dorcant's appeal. Indeed, were the BIA to have applied the doctrine, it seems that the Government would have been estopped only from arguing that USCIS had timely scheduled his oath ceremony (an argument that the Government never made in the first place). Although Dorcant argues that the Government should have been estopped from "cit[ing] [his] misconduct or conviction as a gainful factor to remove [him] from [the] United States," (Pet'r's Mem. in Supp. of Informal Br. 16), he provides no authority to support such a result. Accordingly, the fact that the BIA did not address his equitable estoppel claim was, at most, harmless error. See Yuan v. Att'y Gen. of the U.S., 642 F.3d 420, 427 (3d

6

Cir. 2011) ("[W]e will view an error as harmless and not necessitating a remand to the BIA when it is highly probable that the error did not affect the outcome of the case.").

In light of the above, and having considered Dorcant's remaining arguments that are properly before us,[5] we conclude that the agency did not err in rejecting his claim of citizenship. Accordingly, we will deny his petition for review.

---

[5] To the extent Dorcant directly challenges USCIS for failing to schedule his oath ceremony, that claim, raised more than five years after the fact in a proceeding in which USCIS is not even a party, is not properly before us.